Galveston, Harrisburg & San Antonio Railway Company v.
Michael Smith.

No. 2676.

1. **Duty of Employer to Employes — Master and Servant.**—The master is liable for negligence in the performance of the duties he has impliedly contracted to perform towards his servant, no matter whether he attempts to perform them in person or by another.

2.  **Same.**—The test to determine where this rule applies is to be found in the character of the act performed which causes the injury, and not in the rank, grade, or department of service of the person performing it.

3.  **Fellow Servant.**—If a road master having power to employ and to discharge the conductor and others working upon the train be negligent in moving the trains without notice of specials, or in halting so as to increase the danger of collision with other trains, such negligence is not that of the railway company, it not appearing that he was incompetent, nor that his power to employ and discharge had any connection with the collision caused by the negligence, or that any other employe upon the train was incompetent.  When injury was caused by such collision it would be chargeable to the act of a fellow servant, and it was error to charge otherwise.

4.  **Superintendent.**—It is the duty of the railway company to take care to avoid collision of trains upon its lines of track, by dispatching orders necessary for such protection.  A neglect of this by a superintendent would be chargeable to the company.

5.  **Case Adhered to.**—Railway v. Williams, 73 Texas, 4, adhered to, and expressions in this opinion controlled by that case.

APPEAL from Colorado.   Tried below before Hon. Geo. McCormick. The opinion states the case.

*Brown & Dunn,* for appellant.—1.   The facts (1) that plaintiff was injured as a result of the negligence of Kennedy, defendant's road master;  (2) that said road master had full control over the movements of the train on which plaintiff was at the time of the collision, and did actually direct and control its movements; and (3) that he, the road master, had power to employ and discharge men in defendant's service engaged in the same capacity in which plaintiff was then working, would not make defendant liable.    Rice v. Nav. Co., 46 Texas, 535;  Robinson v. Railway, 46 Texas, 549; Dallas v. Railway, 61 Texas, 196; Railway v. Welch, 72 Texas, 298;  Cool. on Torts, pp. 544, 545, 546.

2.   The court below erred in the charge concerning the negligence of the superintendent of the defendant, because there was not a syllable of evidence showing any such negligence, and the giving of such charge was calculated to induce the belief on the part of the jury that the court thought there was negligence, and it was therefore misleading and calculated to prejudice the defendant.

*Delaney, Kennon & Harrison,* for appellee.—The facts would make the defendant liable.    Railway v. Watts, 63 Texas, 549;  Douglas v. Railway, 63 Texas, 564; Wall v. Railway, 4 Texas Law Rev., 36; 4 Wait's Act. and Def., p. 416; 2 Thomp. on Neg., pp. 1028, 1034; Railway v. Whitmore, 58 Texas, 276.

COLLARD, JUDGE.—The court instructed the jury as follows:

" 10.   If you find from the evidence that plaintiff was injured as hereinbefore stated, and that such injuries resulted from the negligence of defendant's road master, and that said road master had full control over

the movements of the train on which plaintiff was at the time of collision, if any occurred, and did actually direct and control the movements of said train, and that he had general power to employ and discharge men in defendant's employ working in the same capacity in which plaintiff was then working, in that case the negligence of the road master would be deemed the negligence of the defendant."

On the same subject the defendant requested the following special instructions:

"2. You are charged that the plaintiff, being one of the employes of defendant, can not recover for any injury he may have sustained while in its service on account of the negligence of another employe, no matter in what grade he may have been; and the fact that such coemploye was in a different grade of defendant's employment from the plaintiff will not affect this rule, and you will find for defendant.

"3. The plaintiff, by the allegations of his petition, being an employe of defendant, entered its service upon the implied understanding that he would assume all the risks ordinarily incident to such employment, among which were the risks of injuries resulting from the negligence of a fellow employe; wherefore, if you believe from the evidence that plaintiff was injured, that such injury resulted from the negligence of either the road master John Kennedy, or the conductor in charge of the train, or the engineer in charge of the engine drawing the train on which plaintiff was at the time of the injury, then he can not recover, and you will find for the defendant."

Appellant assigns the following error: "The court below erred in refusing to instruct the jury as asked by the defendant in its charges No. 2 and No. 3, and in giving in lieu of them the tenth paragraph of the charges asked for the plaintiff, wherein the jury were told that the road master's negligence would be the negligence of defendant, for the reason that by the undisputed evidence in the case the road master was only the fellow servant of the plaintiff, and if by the negligence of the former the latter was injured there would be no liability on the part of the defendant for such injury."

As to the road master's authority over a work train and its operatives, we make the following extract from plaintiff's testimony: "All the personal knowledge I have of the amount of authority that Mr. Kennedy has is that he is road master. If an engineer don't suit him he can send him off and get another—that is, an engineer that is working for him. Every train that I have seen in that business the road master as long as he stays with it has charge of it. As long as the road master has charge of that kind of a train he has the right to discharge the engineer, or at least to send him off and get another. The road master would put the conductor off, too, if he did not suit. I know that to be so. I know that he can send the conductor away out of his employ and get another if he don't

suit.   He can discharge the conductor or engineer out of his employ, but.
I could not say he could discharge them out of the company's service.
The road master has this authority only when the train is with him."

It is needless to say that this evidence is in conflict with that adduced
by defendant.   The questions presented by the assignment of error are,
was the road master a fellow servant of plaintiff? and did the charge of'
the court give the jury the proper criterion to determine the question?'
There is difficulty in answering these questions because of the contrariety·
of opinions upon the subject.   It can not be decided by the mere grade
of the company's agent charged with the negligence, as almost all grades.
and ranks in railway service have been considered and decided differently
by different courts.   2 Thomp. on Neg., 1028–38; Patt. Ry. Acc. Law,
secs. 324, 325.   This variety of decisions grows out of the difference·
in the application of the principle which is claimed to be the test of fel‑
low servant.

Mr. Thompson, as a result of his investigation of the authorities, form‑
ulates a general rule, as follows:   "All who serve under the same master,
work under the same control, derive authority and compensation from
the same common source, are engaged in the same general business,
though in different grades or departments of it, are fellow servants who
take the risks of each other's negligence."   2 Thomp. Neg., 1026, sec.
31.   The same rule with some modifications is given by other authors.
4 Wood Ry. Law, sec. 388.

As applicable to railroad servants, a text writer furnishes the following·
rule:   "It therefore may be laid down as the result of the authorities.
that the common object of railway service being that of fitting the line
for traffic and of carrying on the traffic, all servants who are working for·
the accomplishment of that common object are fellow servants within
the rule."   Patt. Ry. Acc. Law, sec. 323.

The application of the rule in anything like a strict sense would make·
all employes and agents of a railway fellow servants, however distinct their·
employment, rank, authority, or relation to the company.   Nearly all
the relations of employes have been decided to create or not to create·
them fellow servants.   It has been decided in this State that the negli‑‑
gence of the conductor having control of the train and its operatives is.
not chargeable to the company, because he is a fellow servant of the sub‑‑
ordinate operatives.   Superiority of rank and authority in the service is·
no test.   Robinson v. Railway, 46 Texas, 550.

We can not review the authorities holding contradictory views concern‑
ing the same relations of superiors and subordinates.   It is sufficient to·
say that they can not be reconciled upon the rules announced and quoted:
above.   The Supreme Court of the United States were divided as to·
whether the company was liable for the negligence of the conductor of a.
train causing injury to an engine driver by a collision, a bare majority of:

the court affirming a judgment in favor of the injured party. Railway v. Ross, 112 U. S., 377.

In treating the subject of vice-principals, Mr. Patterson speaks of the test admitted in some cases, holding that if the company gave to a servant the power of appointing and discharging subordinate servants, the servant invested with such power is a vice-principal; but he says: "A more logical test is to be found in the grant to a servant of that discretionary and supervisory power in the administration of a railway which is necessarily exercised by the controlling authority of the railway, or by some agent to whom it has been specially delegated." Ry. Acc. Law, 322.

Again he says: "The general rule in the United States is that which is stated by Allen, J., in Malone v. Hathaway, 64 New York, 5, in these terms: 'When the servant by whose acts of negligence or want of skill other servants of the common employer have received injury is the *alter ego* of the master to whom the employer has left everything, reserving to himself no discretion, then the middleman's negligence is the negligence of the employer.'" Id., 321, 322. The principles in the above extracts approximate the rule as applied in this State.

In Wall v. Railway, 4 Texas Law Review, 36, the Commission of Appeals say: "The general test applied is as to whether such employe has the power to employ and discharge the servants who are subject to his control and direction. An agent having such authority has been generally considered, as far as the servants under his control are concerned, as in legal effect occupying the position of the master."

Justice Gaines, in commenting on the rule in Railway v. Farmer, 73 Texas, 85, says: "To a limited extent the rule so laid down is correct. When the duty which the agent is required to perform is a direct obligation which the master owes to all his servants the doctrine is applicable." The opinion then proceeds to illustrate the point, showing that the company is required to select competent servants, to furnish safe tracks and machinery, and that it owes this duty to all its servants; so that if it should delegate such matters to an employe of any grade, and the employe is negligent in the performance of the duty, the company would be responsible if injury resulted to another servant from such neglect or want of care. So we see the liability of the company is made to depend upon the servant's failure to exercise proper care in the discharge of such duties as the company owes to all its servants. This rule as well as others is ably discussed by George W. Easley, of the Chicago bar, in quite a lengthy article found in a note to the case of Kirk v. Atlanta & Charlotte Air Line Railway Company, 25 American and English Railway Cases, 513, and the conclusion attained after exhaustive research that this is the just rule. He says: "The just rule is to hold the master liable for negligence in the performance of the duties he has impliedly contracted to perform toward his servant, no matter whether he attempts to

perform them in person or by another. The true test, then, to determine where the rule considered applies is to be found in the character of the act performed which causes the injury, and not in the rank, grade, or department of service of the person performing it. If it be a neglect of one of the duties the master has impliedly contracted to perform, the master is liable, no matter what be the rank or grade of the person he has designated, because that person is an agent and not a servant; but in all other cases he is not liable, because of the application of the rule as to fellow servants."

Our Supreme Court has adopted this rule in the last case upon the subject—a rule which has the merit of being certain and easily understood. In its application it will only be necessary to ascertain if the injury complained of was the result of the negligent omission of a duty, or the negligent performance of a duty required by law of the master to all his servants. Of course where the master is himself guilty of negligence, or where the corporate officers of a chartered company commit or omit the act constituting negligence by which a servant is injured, liability would arise in all cases, dependent upon other known principles. The rule is intended as a guide in cases of negligent acts of the agent which may be imputed to the principal.

Now briefly to apply the rule to this case. If Kennedy, the road master, had control of the train men operating the train and its movements, and had power to employ and discharge the conductor and other operatives, and was guilty of negligence in moving the train from Columbus without notification as to the approach of specials with which there was danger of collision, or if his neglect consisted in having the train stopped at Smith's Junction for such time as rendered the danger of collision with other trains between there and Alleyton or at Alleyton imminent, the negligence would be his own as an employe or servant of the company, and not the negligence of the company, in the same sense that the same negligence would have been that of the conductor under similar circumstances. In either case it was the individual negligence of the servant, a fellow servant of plaintiff. He was none the less a servant of the company by being its road master. It was not alleged or shown that he was unfit or incompetent, or that the company was neglectful of its duty in employing him; nor does it appear that his authority to employ and discharge the conductor or train men had any relation to the collision, for it is not alleged or proved that the conductor or any other employe on the train having control of its movements was incompetent, or that Kennedy's exercise of the authority to employ or discharge the operatives was the occasion of the accident. The court's charge upon this subject was erroneous.

There is another branch of the case not set out in the petition except by general allegation that defendant's negligence caused the injury to plaintiff, but which is shown by the testimony and specially submitted to

the jury in the charge of the court, which charge is made the subject of an assignment of error. The conductor of the special freight train that collided with the work train had orders to look for engine 69 between Eagle Lake and Columbus after 6:45 a. m. Neither the conductor of 69 nor the road master had similar orders in reference to the freight train. There was a telegraph office at Columbus, where they stopped all the night previous to the collision on the morning of the 30th of November, and from which point the engine with the caboose was moved on that morning. It was proved that such orders were delivered by the train dispatcher, signed by the superintendent of the road. The collision occurred at Alleyton, between Eagle Lake and Columbus, at 7:10 a. m. The superintendent had given general orders to the conductor of the work train to " work between Eagle Lake and Columbus, avoiding regular trains and guarding against specials." Had the superintendent given orders to this conductor to guard against the freight train, the conductor might have avoided the collision. It was impossible for him to flag against the special, because there was not sufficient time to do so after the train reached Alleyton and the collision. On the question here presented—the duty of defendant to warn its conductors of the movements of other trains—we note the following authorities:

In a case in New York, where the superintendent failed to warn a conductor of one train of the dangerous approach of another that had the right to the track, because of which there was a collision, injuring an employe, it was held correct to submit to the jury the question as to whether " the defendant had omitted the doing of anything which ought reasonably to have been done to prevent casualty." Sherman v. Railway, 91 N. Y., 332. In another case in Ohio, in which the superintendent of the company was clothed with the power to make and suspend regulations regulating the movement of trains, it was held that in legal effect he was the master: and as such by special order he required a work train to stand on the main track to load gravel, notwithstanding a freight train on its regular time was approaching and did run into the work train, causing injury to a laborer thereon, it was held that the order suspending the general regulations was unreasonable, and that the company was liable. 5 Am. and Eng. Ry. Cases, 530.

In another case in Kentucky, where the telegraph operator made a mistake in writing out an order for a train, which induced the conductor to believe he might occupy the track longer than the time specified in the order, whereby a servant of the company was injured, it was held that the company was liable. McLeod v. Ginther's Admr., 8 Am. and Eng. Ry. Cases, 162.

The cases where the superintendent was negligent were put on the ground that he was by virtue of his powers the master. But why was he master, unless because he was in such case clothed with powers that

belonged to the company, the careful exercise of which was obligatory upon the company—that is, charged by the company with duties it owed to its servants?

Whether we accept the reasons upon which the courts rested these decisions or not, the rule as given in the Farmer case still applies, as it will in the case of the failure of the operator to properly copy the order, which the court put upon the ground that he was a servant in a different department and therefore not a fellow of the servant injured.

Upon the hypothesis that the company is bound to inform its servants and warn them of what is necessary to avoid collisions with trains, and that it can not shift its own duty to a servant and then in case of injury claim that it was the result of negligence of a fellow servant, the foregoing cases will stand upon the same principle. A failure to perform this duty increases the risk of employes on and operating trains, and exposes them to a risk not embraced in their implied contract. The company ought to know where its trains are, and if the operators do not know it is the duty of the company to inform them and give such orders as are reasonably necessary to avoid increased peril. When the proper servant is so informed and ordered and he then neglects his duty or violates his orders, causing injury to another servant, the negligence would be his, and the doctrine of fellow servants would apply.

It has been said "that it is the duty of railways to make regulations for the safety of their servants and to use all reasonable means for the enforcement of those regulations." Patt. Ry. Acc. Law, sec. 296, and authorities there cited.

It will not be held that it would be demanding too much of a railway company to give such information and orders to its servants in charge of its trains as will enable them to avoid collisions. We are of the opinion that this is the duty of the company. The charge of the court made the neglect of the superintendent in this respect the neglect of the company, and in this there was no error. The assignment of error attacks the charge not upon the ground that the negligence of the superintendent was not particularly pleaded, but on the ground that there was no evidence to justify it. We think there was evidence upon which the charge might have been given.

Because of the error in the court's charges holding the company liable for the supposed negligence of the road master, we think the judgment should be set aside and the cause remanded.

*Reversed and remanded.*

Adopted March 25, 1890.

GAINES, Associate Justice.—At the time the Commission returned their report and opinion in this case the opinion in the case of Railway v. Williams, decided at the last Tyler Term, had not been published. 75

Texas, 4.   In that case we held that the servant of a railway company while working under the immediate supervision and control of another employe of the company·was not the fellow servant of such employe, provided the latter had the power to employ and discharge those who were subject to his orders.   We are not now prepared to recede from that ruling.   But that case is distinguishable from this.   The appellee in the present case at the time of the accident was not employed under the immediate eye of the road master.   With the qualification that we do not approve any expressions in the opinion of the Commission which may seemingly conflict with the opinion in Railway v. Williams, *supra*, we adopt their opinion and reverse and remand the case.