GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY
v. JOSE ARISPE ET AL.

No. 6875.

1. **Charge—Failure to Define Gross Negligence.** — In an action for damages brought by the parents against a railway company for negligently causing the death of their son, an employe, the court instructed the jury to find for the plaintiffs if the death was caused by the "unfitness, gross negligence, and carelessness" of the superintendent and managers of the railway. The defendant requested no definition of these terms, and the court gave none. *Held,* such omission was not a ground for reversal when no request was made at the time for further instruction.

2. **Negligence of Managers, etc., of Railway Company.**—The cause of action in the petition was the alleged unfitness, gross negligence, and carelessness of the superintendent and managers of the defendant company, causing the death. No allegation of unfitness was made against the employes handling the two colliding trains causing the injury. There was no evidence whatever of the unfitness of the superintendent or managers. *Held,* that it was error and ground for reversal that the trial judge instructed the jury that the plaintiffs should recover if the death was caused by the unfitness, etc., of the superintendent, etc.

3. **Risks Assumed by Employe of Railway Company.** —An employe of a railway company has the right to assume that the company would use due diligence in providing fit and competent servants. His relation to the managers and superintendent was not that of fellow servant.

4. **Backing the Train.**— It was alleged that at the time of the collision the construction train upon which was the deceased, at the time of the collision was propelled from the rear. It not appearing that the mode of propulsion was more dangerous, or that it in any way contributed to the injury, the issue was properly not submitted to the jury in the charge.

5. **Fellow Servant.**—See facts upon which it is held that the deceased, a construction hand being carried upon the road to his place of work upon a construction train, killed in a collision with a passenger train through negligence of those in charge of

the construction train, was a fellow servant with those by whose negligence he suffered, and that he was killed in the discharge of the very labor he was employed by the railway company to perform, and the dangers of which he assumed at the time of his employment.

6. **Life Expectations Tables.**—It was error to admit in evidence a table of life expectations not shown to be accurate, nor of established repute upon the subject.

APPEAL from Val Verde. Tried below before Hon. Winchester Kelso. The opinion states the case.

*John M. Coleman* and *Clark & Old*, for appellant.—1. The court should have given in its charge to the jury the legal definition of each of the terms, unfitness, gross negligence, and carelessness. Cotton Press v. Bradley, 52 Texas, 596.

2. The charge of the court should be given with reference to the facts proved on the trial, and should not submit issues to the jury that were not made by the facts proved on the trial of the cause. Rev. Stats., art. 1317; Railway v. Rider, 62 Texas, 270; Railway v. Crowder, 63 Texas, 505; Garner v. McGowen, 27 Texas, 490; Cook v. Dennis, 61 Texas, 248.

3. When employes serve the same master, labor under the same control, derive their authority and receive their compensation from the same general business, although they may be of different grades or operate in different departments of the common service, they are fellow servants. Railway v. Watts, 63 Texas, 549; Dallas v. Railway, 61 Texas, 202; Robinson v. Railway, 46 Texas, 550.

4. The charge of the court should never assume that particular facts have been proved, but should leave it entirely to the jury to determine. Railway v. Lanham, 1 Ct. App. C. C., secs. 251, 582; Golden v. Patterson, 56 Texas, 628.

5. Only competent and legal evidence can be introduced to establish facts in issue, and when evidence is objected to upon the trial it is incumbent upon the party seeking to introduce it to show its competency and legality before same can be introduced, and the admission of the slightest illegal testimony which might have possibly influenced the result will be fatal. Ross v. Kornrumpf, 64 Texas, 390.

6. When a party accepts employment with a railway company he assumes to understand the service and to be in every way competent to discharge his duties, unless in the contract of employment the railway company assumes to instruct him with reference to his duty and the dangers incident to the service. Railway v. Watts, 63 Texas, 549; Watson v. Railway, 58 Texas, 438; Railway v. Ormond, 64 Texas, 489; Railway v. Clemmons, 55 Texas, 88; Railway v. Smith, 52 Texas, 178.

No brief for appellees reached the Reporter.

MARR, JUDGE, *Section A.*—Jose Arispe and his wife as plaintiffs in the court below instituted this suit to recover both actual and exemplary damages of the appellant on account of the death of their son Pedro Arispe, alleged to have been caused by the negligence of "the superintendent and managers" of the defendant's railway. It was alleged that said Pedro was in the employ of the defendant "as a laborer on the reparation of its roadbed" at $30 a month, working in connection with and on what is known as a work or construction train. His death was caused by this train colliding with one of the regular freight trains of the defendant, in Val Verde County, on the 31st day of December, 1886, at a curve in the railway track. It was alleged by the plaintiffs that "at the time of his death both of said trains were directed, controlled, and moved under the immediate orders of defendant, acting through its managers and superintendent, and at the time of the collision were being so moved; and the collision and consequent injuries to deceased were the consequence of the unfitness, carelessness, and gross negligence of said officers, who toward deceased stood in the place of employer, all of which was well known to defendant." It was also alleged that at the time of the collision the construction train on which Pedro Arispe was being transported was run and propelled along by an engine in the rear of the train and a caboose in front, and that said "mode of propulsion" was unsafe and extra hazardous, of which deceased was ignorant at the time, and that the danger had not been explained to him; and that such risk was of that character which he had not assumed when he entered the company's service, etc. There was a verdict in favor of the plaintiffs for $1000 actual damages, and defendant has appealed.

1.   It is objected that the court erred in not defining at all the terms "unfitness, gross negligence, and carelessness," which it instructed the jury would authorize a recovery by the plaintiffs. The defendant's counsel asked no charge on this subject, but stood mute and quietly took the hazard of the verdict, "speculating" on the result under the law as given in the charge of the court. Under such circumstances we are not prepared to hold that this omission of the court constitutes a reversible error. Ins. Co. v. Ende, 65 Texas, 118; Cockrill v. Cox, 65 Texas; 675, 676; Beazley v. Denson, 40 Texas, 434.

Undoubtedly it would have been most appropriate for the court to have at least instructed the jury as to the legal definition or significance of the term "gross negligence," for their guidance, and upon another trial the learned judge will doubtless do so, especially if counsel will take the trouble to request a proper instruction on that subject and thus call the attention of the court to it. Cotton Press Company v. Bradley, 52 Texas, 596.

2.   We are of the opinion that the fourth assignment of error is well taken. It objects to the correctness of the fifth paragraph of the gen-

eral charge of the court on account of its inapplicability to any state of the case arising under the evidence adduced at the trial. The following is the fifth paragraph of the court's main charge:

"Now, applying the law as above stated 'to the facts of this case,' I charge you that if you find that plaintiffs have proved by a preponderance of evidence that Pedro Arispe received injuries by the collision of the cars of defendant, and that such injuries resulted in his death, and that such injuries were caused by the unfitness, gross negligence, or carelessness of the manager and superintendent of defendant company, and that such unfitness, gross negligence, or carelessness was of such a character that Pedro Arispe could have recovered had he not in fact been killed, then you will find for the plaintiffs," etc.

It is nowhere alleged in the petition that the engineers or conductors (or other ordinary servants of the company) who were actually in charge of the two trains when they collided were either unfit or incompetent or were guilty of gross negligence; but this is alleged only with reference to "the managers and superintendent" of the defendant, as we have already stated, and it was in regard to these chief officers that the court entirely confined its charge. Thus the court followed the allegations of the petition strictly, but as we think overlooked the fact of the entire absence of any evidence to sustain the allegations. Railway v. Crowder, 63 Texas, 502.

There is not a particle of proof that we have been able to find that any "manager" or "superintendent" of the defendant company was unfit or incompetent, or had been guilty of any gross negligence leading to or causing the collision of the trains and the consequent death of Pedro Arispe. On the contrary, the only evidence on the subject tending in the remotest degree to show that any of the chief officers or any vice principal of the company had any direct control or supervision over the operations of these two trains relates to the superintendent of that division, one W. G. Van Vleck, who was proved without any opposing testimony to have been both fit and fully competent for the position and careful in the discharge of his duties. Indeed, had his instructions (minutely prepared and delivered to those in charge of the trains) been observed, in all probability no wreck would have occurred. He was not in charge of either of the trains nor present, but was at San Antonio at the time, directing, as we presume from the evidence, the movements and the dispatching of all of the trains in his division. The evidence makes it most apparent that the collision was due to the negligence of the engineer and conductor, or at least of the employes in charge of the construction train, who did not sufficiently heed nor obey the instructions given them in a telegram from the superintendent to the effect that they should expect and beware of the regular freight train No. 80 (which collided with the work train), from 11:30 a. m. on that day. The conductor and engineer on No. 80 were

also instructed not to cross Devil's River before the above hour on account of the work train. They did not do so until 11:35, and at 11:40 the collision occurred. It was proved that under such instructions and when the time arrived the work train should have protected itself or provided against the danger beforehand "with a flag or by taking a side track." Those actually in charge of the construction train in question did neither, but continued to advance on the main track regardless of the order. They were unquestionably, so far as the evidence discloses, the fellow servants of Pedro Arispe, for whose negligence, gross or otherwise, he could not have recovered, had his death not been caused by the injury, unless they were incompetent. Railway v. Rider, 62 Texas, 270; Railway v. Watts, 63 Texas, 549, and cases cited; Railway v. Smith, 76 Texas, 611, and authorities cited. They are not alleged, as we have said, to have been unfit and incompetent, and the court did not submit to the jury the question of their unfitness or incompetency. It is not alleged that the section "boss" was an incompetent servant, nor is he shown to have had any control over the operations of the train, and that issue was not submitted to the jury, unless he was intended by the court to be included in the general description of "managers and superintendents of the defendant." He would hardly be regarded as one of these without further proof on the subject; and besides, no evidence of even his "unfitness" was offered, to say nothing of the knowledge of the defendant of that fact if it had been alleged and proved. In any view of the case it was error to submit to the jury under the pleadings and the evidence as contained in the record "the unfitness, gross negligence, or carelessness of the managers and superintendent of the defendant," or even that of its ordinary employes or servants, if the latter may be regarded as embraced in the language of the charge. The court thus charged the jury almost exclusively on a phase of the case not justified by the evidence, and as that was practically the sole ground upon which it authorized the jury to find for the plaintiff it doubtless influenced their finding and led to the verdict. The judgment must therefore be reversed on account of this action of the court. What the court charged about the assumption of the ordinary risks of the employment by the servant when he enters the service of the master was general, and as we understand the charge left to the jury in effect the determination of the question whether "the unfitness, gross negligence, or carelessness" of "the managers and superintendent" were among the risks of the employment assumed by Pedro Arispe when he entered the service of the company. This portion of the charge, or view of the law, is more favorable to the defendant in some respects than it was entitled to, had the evidence raised the issue of the unfitness or incompetency of its servants and agents. The incompetency of the servants, much less of the managers of the defendant, was not under the law one of the ordinary risks as-

sumed by Arispe when he entered its service. Railway v. Williams, 75 Texas, 7. On the contrary, he had the right to assume that the company would use diligence in providing fit and competent servants, and his relation to "the managers and superintendents," or in fact to any vice principal of the defendant, was not that of a fellow servant. Bonner and Eddy v. Whitcomb, 80 Texas, 178; Railway v. Smith, 76 Texas, 611. The superadded danger, if any, "of backing the train," which was the mode of operating it when the wreck occurred, was not, in the application of the law to the facts as made by the court, distinctly submitted to the jury as a basis for a verdict in favor of the plaintiffs. There was no proof that the danger was thereby increased, or that this mode of running the trains was the proximate cause of the injury, without which it would not have occurred.

In this connection we deem it appropriate to advert to the eighth assignment of error, which in effect complains that the court should have granted a new trial, because among other reasons the evidence showed that the deceased was a fellow servant with them in charge of the train, "and that he was killed in discharge of the very labor he was employed by the defendant to perform, and the dangers of which he assumed at the time of his employment," etc. There are other matters embraced in the assignment that we do not deem it necessary or important to be considered. The summary of the facts bearing on the above question as contained in the assignment is supported by the record, and is as follows: Pedro Arispe "had been in the employment of defendant company for thirty days prior to the date of his death, each day performing the identical labor and passing over the identical place of the accident, twice each day, once per day with engine in front of caboose, and once each day with caboose in front of engine, and there was more danger, when the caboose was running in front, on the flat car next to said caboose, and on the unfortunate day deceased was by his own selection riding on a flat car next to the caboose, and the caboose was at the time running in front, and those who selected flat cars on that occasion to ride on further back from the caboose were not injured."

The court properly submitted to the jury the question of contributory negligence upon the part of deceased; but independent of that issue we are of the opinion that under the circumstances above enumerated the mere mode in which the train was being propelled or operated at the time, and which was the usual mode when he entered the service, as well as on the day of his death, and of which he was perfectly aware, can not be regarded as having exposed him to any extraordinary hazard or risk arising from an extrinsic cause and not assumed by him when he accepted the employment, even if "the backing of the train" had been shown to have been the cause of the injury. Railway v. Watts, supra; McKinney on Fel. Serv., sec. 9.

It seems to us, in the light of the record, that the only phase of the case in which the defendant would be liable on account of the death of Pedro Arispe would be upon allegation and proof of the unfitness or incompetency of some one or more of the employes in charge of one or both of the colliding trains, and that such unfitness or incompetency of the servant was known to the company or ought to have been by the exercise of due diligence, or that it failed to exercise such diligence or care originally in the selection of the servant or servants; and further, that the wrecking of the train and death of Arispe was caused by the negligence, misconduct, or disobedience of such incompetent servant or servants. In such case the negligence would be that of the master, for which he would be liable, although the negligence of a fellow servant contributed to the injury. Railway v. Smith, supra; McKinney on Fel. Serv., secs. 16, 24; Cool. on Torts, 541, 560, 558; 15 S. W. Rep., 901, and cases cited.

The action of the court as indicated in the seventh assignment of error was erroneous, and the following is the assignment, viz.: "The court erred in permitting plaintiffs over the objection of defendant to introduce in evidence the table of the expectation of the years of life contained in the book entitled "A Million of Facts; Conkling's Handy Manual of Useful Information and Atlas of the World; All for Twenty-five Cents," for the reason specified in defendant's bill of exception No. 1, and because the same was no authority and of no higher character than any cheap book sold on railways, and there was no evidence offered showing the correctness of the table, and it was calculated to prejudice the minds of the jury against the defendant."

Whether this ruling of the court, if it were the only ground relied on, would constitute a reversible error we need not inquire. Suffice it to say that this book, however flattering may be its title or alluring its price, is not one of those standard works of which the courts take judicial notice and recognize as authority, and consequently it should have been excluded in the absence of any proof of its correctness. Abb. Trial Ev., p. 724, and note 4.

On account of the errors indicated, we conclude that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 23, 1891.