**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Billie DOUGHARTY et al., Appellees.**

**No. 8509.**

Court of Civil Appeals of Texas, Beaumont.

Sept. 25, 1980.

James S. Roper, Lufkin, for appellant.

John Seale, Jasper, for appellees.

KEITH, Justice.

The defendant below appeals from an adverse judgment entered after a trial to a jury of a claim for death benefits under the Workers' Compensation Law. The trial court entered judgment for the widow and the two minor children for benefits under the provisions of *Tex.Rev.Civ.Stat.Ann. art. 8306, § 8 (Supp.1980)*, and awarded claimants' attorney what was calculated to be one–fourth of the lump sum benefits payable under the terms of the judgment. We affirm.

J. C. Dougharty was a truck driver for Louisiana–Pacific Corporation. He was taken to the job site by his wife early in the morning of November 6, 1978; and, according to his wife and a fellow employee, he was in good spirits and had no apparent physical problems.

The truck he was to operate upon the day in question had been loaded with lumber stacked three bundles high. According to fellow–employee, Paul Whitton, Dougharty was required to spread a tarpaulin over the load of lumber to protect it from the elements. Whitton helped him lift the tarpaulins to the top of the truck, leaving it to Dougharty to spread and secure the covers over the load of lumber. According to Whitton, the tarpaulins weighed about eighty pounds each and it was necessary to lift the bundles eleven or twelve feet to the top of the load of lumber. It was heavy and strenuous work.

Marjorie Y'Barbo, a waitress at a cafe in Buna, some distance south of the employer's truck yard, first saw Dougharty when he entered the cafe about ten in the morning holding his head complaining of pain and saying, "I'm dying, I'm dying." Ms. Y'Barbo went for an ambulance and Dougharty was taken to the medical clinic in Buna.

The records of the clinic reflected that Dougharty stated that "he was putting tarp on a load of lumber and felt his neck pop at the base." Later that morning, he was transferred to a hospital in Jasper. The hospital records again mention the incident of the tarpaulin and the pain, adding that he "[s]tated [he] became dizzy and has severe headache."

He remained in the Jasper hospital for a week and was taken to a diagnostic clinic in Houston where he was examined by Dr. High and Dr. Neblett who concluded that he was suffering from a subarachnoid hemorrhage. Extensive tests confirmed the diagnosis and, on November 15, he was transferred to a hospital in Houston where a left

frontotemporal craniotomy was performed and an aneurysm was located. The surgeons then "placed two clips on the weakened area of the artery" and Dougharty was placed in intensive care.

Early in the morning of November 16, Dougharty lapsed into a coma and the surgeons operated again, but he died on November 17 without having regained consciousness. Dr. Neblett, whose qualifications are unchallenged, testified that in his opinion the overexertion and straining in placing the tarpaulin over the lumber was the producing cause of his death. Although cross–examined with vigor, Dr. Neblett remained firm in his causation testimony.

The jury found that Dougharty had a ruptured aneurysm on November 6, 1978, which was received in the course of his employment with Louisiana–Pacific Corporation, and that such aneurysm was a producing cause of his death.

Defendant attacks the three jury findings with points complaining of no evidence, insufficient evidence, and that the answers are against the great weight and preponderance of the evidence. In passing upon the evidentiary challenges, we will follow the appropriate criteria of review as set out in *Lucas v. Hartford Accident & Indemnity Co.*, 552 S.W.2d 796, 797 (Tex.1977); and *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

We readily agree with appellant that the compensation law is not designed to provide health insurance, "but is purposefully designed to compensate an employee for incapacity flowing from an accidental personal injury while engaged in the performance of his employment." *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649, 650 (Tex. 1976).

■ Defendant argues that Dr. Neblett's testimony on cross–examination destroyed the probative effect of his testimony as to causation. Dr. Neblett testified that he could not know for certain whether or not a strain which Dougharty had at work caused the aneurysm to rupture; yet, based on the history given and his own medical knowledge, he was of the opinion that the strain was the producing cause of the rupture. It may very well be true that the aneurysm had existed before Dougharty went to work that morning; but, the existence of a predisposing bodily injury will not preclude compensation. *Baird v. Texas Employers Ins. Ass'n*, 495 S.W.2d 207, 210 (Tex.1973).

Indeed, the Supreme Court has held that an accidental injury may be established by "largely circumstantial" evidence of lifting and straining that could have caused the rupture of blood vessels. See *Carter v. Travelers Ins. Co.*, 132 Tex. 288, 120 S.W.2d 581, 584–585 (1938), cited in *Baird*, supra.

■ We have given careful attention to the complete record and find no merit in any of defendant's first nine points of error challenging the legal and factual sufficiency of the evidence to support the liability findings. Each point is now overruled.

In its tenth point of error, defendant complains that the trial court submitted an erroneous instruction of how a ruptured aneurysm may occur and refused its correctly worded instruction on the subject. We find no merit to the contention. The second special issue was in the precise language of *PJC 21.11* [*2 Texas Pattern Jury Charges 34 (1970)*] with the phrase "ruptured aneurysm" being substituted for "heart attack". Special Issue No. One used the language suggested in *PJC 20.02*.

■ We are not persuaded that the requested instruction was improperly refused. The requested instruction, quoted in the margin,[1] places an undue burden on the claimant. We have considered the authorities replied upon by defendant but do not find any fully supporting the contention now advanced. On the other hand, the precise instruction used in our case has been approved. See *Transport Insurance Co. v.*

1. The requested issue read: "A ruptured aneurysm is in the course of employment if it is produced or precipitated by strain or exertion in his work which is not within the usual and customary duties of the employee's work. Otherwise, a ruptured aneurysm is not in the course of employment, even if it occurs on the job."

*McCully,* 481 S.W.2d 948, 951–952 (Tex.Civ. App.–Austin 1972, writ ref'd n. r. e.). The tenth and eleventh points of error are overruled.

In the twelfth point, complaint is made that the trial court erred in failing to instruct the jury that the aneurysm was not in the course of employment if it occurred while the claimant was on the job "doing his usual and customary task[s]." We find no merit to the contention and it is overruled. See *Commercial Standard Ins. Co. v. Curry,* 460 S.W.2d 464, 467 (Tex.Civ.App.–Houston [1st Dist.] 1970, writ ref'd n. r. e.), and cases therein cited.

In points thirteen, fourteen, and fifteen, defendant complains of the allowance of attorney's fees in a lump sum. The points assert that there was no evidence showing the life expectancy of the widow, the likelihood of her remarriage, or the present value of the future fees.

After the jury had returned its verdict, plaintiff filed a motion with the trial court seeking attorney's fees in a lump sum. The motion read in part:

"Movants [plaintiffs] further move the Court to take judicial knowledge of the Widow's Pension Table used by the Industrial Accident Board of Texas and of the age of the widow, Billie Dougharty, as testified to on the trial hereof, and that based thereon the Court find that there is a present value of future worker's compensation benefits in this case from and after January 18, 1980 in the amount of $94,021.20, after proper discounts, and that the Court order that one–fourth of such amount, being $23,-505.30, be paid to [counsel] in a lump sum, with the remaining three–fourths to be paid weekly to the proper beneficiaries under the Worker's Compensation Law."

Over the written protests of defendant, the Court granted such motion and entered judgment for the widow and the minor children, ordering the past due installments paid in a lump sum and future payments paid weekly as they accrue. The Court then entered judgment for payment of one–fourth of the awards in a lump sum to claimant's attorneys as shown in the margin.[2]

We have examined the record carefully and find that while the widow's age is shown, there is nothing to be found about any "Widow's Pension Table" except in the unsworn post–verdict motion of plaintiffs.

Defendant relies almost exclusively upon the dictum used in *Walden v. Royal Globe Insurance Co.,* 577 S.W.2d 296, 301 (Tex.Civ. App.–Beaumont 1978, writ ref'd n. r. e.). The sole question presented for determination in *Walden* was the propriety of the trial court's action in sustaining the special exception to pleadings seeking a lump sum settlement for the claimants and we declined, specifically, to address the precise question now presented. (Id.)

■ At first blush, it would appear that plaintiffs have pushed the doctrine of judicial notice to its absolute limit. Insofar as this reviewing court can determine, the "Widow's Pension Table" may have had no more probative value than the booklet of tables excluded in *Galveston, H. & S.A. Ry. v. Arispe,* 81 Tex. 517, 17 S.W. 47, 50 (1891).[3] Defendant asserts (without contradiction) that although the statute relates to benefits payable to widowers as well as widows, the table relates only to widows, raising some doubt as to the Industrial Accident Board's use thereof in *all* cases under *Sec. 8(d).*

2. "The Court takes judicial knowledge of the Widow's Pension Table used by the Industrial Accident Board and of the age of the widow Billie Dougharty as of January 18, 1980 as being 44 years, and based thereon the Court finds that there is a present value and sum certain of $94,021.20 that can be placed on claimants' case after proper discounts, and the Court finds that one–fourth of such amounts should be awarded to the claimants' attorneys as their attorneys' fee in a lump sum, in addition to the attorneys' fee set out above for accrued benefits."

3. In *Arispe,* the excluded document was styled: "A Million of Facts: Conkling's Handy Manual of Useful Information, and Atlas of the World; all for twenty–five cents."

Plaintiff's reliance upon language taken from *Twin City Fire Ins. Co. v. Cortez*, 576 S.W.2d 786, 791 (Tex.1978),[4] is misplaced. There, the question was not the right to lump sum payment of attorneys' fees based upon judicial knowledge taken of an unknown set of tables; the issue was the right of beneficiaries to enforce their rights under *Tex.Rev.Civ.Stat.Ann. Art. 8307 § 5a (1967)*.

But, when we come to consider the precise complaint before us, we do not write upon a clean slate. In *Liberty Mutual Ins. Co. v. Ramos*, 543 S.W.2d 392, 393 (Tex.Civ. App.–El Paso 1976, writ ref'd n. r. e.), the Court affirmed a judgment awarding lump summing of the attorney's fees. *Ramos* relied upon *Texas Employers Insurance Ass'n v. Motley*, 491 S.W.2d 395 (Tex.1973). We pause to note that *Motley* involved a fixed term of weeks during which benefits were payable, an element lacking in our case.

Next, in *Texas Employers' Insurance Association v. Flores*, 564 S.W.2d 831, 834 (Tex.Civ.App.–Fort Worth 1978, writ ref'd n. r. e.), the lump sum judgment for attorney's fees was affirmed, the court following *Motley* and *Ramos*, supra. Still a third court has approved an award lump summing attorney's fees in a death case arising under *Art. 8306, § 8(d)*. See *Texas Employers Ins. Ass'n v. Miller*, 596 S.W.2d 621, 626–627 (Tex.Civ.App.–Waco 1980, no writ). In rejecting the contention now urged by defendant, the Court cited and relied upon *Ramos, Flores*, and *Motley*, supra.

We experience some judicial unease with the doctrine enunciated in this line of cases; but, our Supreme Court apparently did not share our feeling when it refused the writ in *Flores* where the question was apparently the only one presented for review.

Solely because we find ourselves bound to follow the prior decisions squarely in point, we overrule defendant's contentions as set out in its final three points of error and now affirm the judgment of the trial court.

AFFIRMED.

CLAYTON, J., not participating.

---

4. The majority opinion in *Cortez* is analyzed critically by Thomas Sartwelle in Annual Survey of Texas Law, "Workers' Compensation", *33 S.W.L.J. 331, 371–374 (1979)*.