**AMERICAN STATES INSURANCE COMPANY OF TEXAS, Appellant,**

v.

**Juanita CADDELL, Appellee.**

**No. 1547.**

Court of Appeals of Texas, Tyler.

Dec. 16, 1982.

Jerry C. Parker, Sammons & Parker, Tyler, for appellant.

Henry T. Skelton, Kugle, Douglas, Skelton & Bandy, Athens, for appellee.

SUMMERS, Chief Justice.

This is a worker's compensation case. The employee, Bennie Caddell, was killed from injuries sustained in an automobile accident when he failed to negotiate a curve and collided with a tree. Employee's surviving wife, Juanita Caddell, brought suit in the trial court to recover workman's compensation death benefits pursuant to Article 8306, § 8a.[1] Her contention was that her husband was killed in the automobile accident while in the course and scope of his employment for Caddell Drywall Company, Inc.

The case was tried before a jury on the single issue of whether the deceased was killed in the course and scope of his employment. On a verdict favorable to the plaintiff Caddell (appellee herein), the court entered a judgment for full death benefits to be paid weekly and allowed appellee's attorneys their unaccrued fees in lump sum. From this adverse judgment, appellant has perfected this appeal. We affirm the trial court's judgment.

---

1. This and all other statutory references are to Texas Revised Civil Statutes unless otherwise noted.

Appellant's first point of error complains that the trial court erred in overruling defendant's motion for judgment notwithstanding the verdict because there was no evidence, or in the alternative, factually insufficient evidence that Bennie Caddell was within the course and scope of his employment at the time of his death. We construe this point of error as raising only a "no evidence" point. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.R. 361, 362 (1960); Rules 301, 418 Tex.R.Civ.P.

Special Issue No. 1 inquired whether Caddell was in the course and scope of his employment with Caddell Drywall, Inc., at the time of the fatal accident. In connection with the special issue, the court gave an instruction defining "in the course of his employment" within the meaning of Article 8309, § 1b. The jury found that the decedent was within the course and scope of his employment at the time of said accident.

As to a "no evidence" point, the reviewing court must reject all evidence contrary to the judgment and consider only the facts and circumstances that tend to support the judgment. Calvert, *supra.* The evidence showed that Bennie Caddell was employed at the time of his death by Caddell Drywall Company, Inc., a company in the business of dry wall sub-contracting. The deceased was the sole employee of the company other than occasional workers who were hired and paid wages for each construction project. Caddell was inexperienced in the business and was supervised by Tommy Williams, one of the stockholders of the business. The record reflects that the stockholders intended to give Caddell the responsibility of completely operating the business when it was determined that he had developed sufficient experience. Mr. Caddell's responsibilities included estimating and bidding on commercial construction jobs and supervising the work. The company maintained a rent free office in Athens, Texas, in a building owned by Tommy Williams; however, the majority of Caddell's work was performed outside of the office. Mr. Caddell also maintained and used an office in his home where he worked on company business. Mr. Caddell was furnished a pickup truck by the company and was reimbursed on a monthly basis for his expenses in its operation. The evidence showed that the truck was used only for business purposes, that this privilege was not abused and that the Caddells used their private automobiles for their personal transportation.

The evidence showed that the day before Bennie Caddell's death he was instructed by Mr. Williams to go to Waco, Texas, on the following day for the purpose of studying blue prints filed in the plan room of Associated General Contractors to obtain figures and specifications necessary to prepare a bid on a construction project. Before he left home the next morning, Mr. Caddell told his wife he was going to Waco. He then went by the office in Athens hoping to meet with Mr. Williams. When Williams didn't arrive by 9:30 a.m., he told Williams' secretary, Sylvia Lewis, that he was going to Waco to get the information to make a bid on a job. Mr. Caddell did not sign the daily log book at the Associated General Contractor's plan room nor did any witness testify as to seeing Caddell in Waco at the plan room on the day in question. However, further evidence showed that very few visitors to the plan room signed the log book and there was no strict requirements that the book be signed. Moreover, a credit card invoice from a gas station in Waco, Texas, a copy of which was found on decedent's person the day he died, was introduced into evidence indicating he had purchased gasoline in Waco on the day of his death. Testimony from the Waco service station attendent verified this purchase by Caddell. Furthermore, Mrs. Caddell testified that she paid this invoice and was reimbursed by the company.

On May 29, 1979, at about 4:00 p.m., Mr. Caddell was killed in a collision presumably because he lost control of the company pickup due to slick roads resulting from a heavy rain. The accident occurred east of Athens on farm to market road 317, which is a direct route from Mr. Caddell's Athens of-

fice to his home and is also a direct route from Waco to his home. Mr. Williams happened by the accident site shortly after it occurred and discovered Mr. Caddell had been fatally injured. Williams removed from the truck estimating pads, a calculator, scale rule, and a copy of the gasoline invoice from Waco. Mr. Williams testified that the estimating pads, the calculator and the scale rule were items Mr. Caddell would use in taking off a job for the purpose of estimating the cost and making a bid.

■ To be entitled to compensation benefits Caddell must have been in the course and scope of his employment at the time of the accident; and whether he was in the course of his employment at the time is measured and limited by §§ 1 and 1b of Article 8309. The general rule is that an injury or death occurring in the use of the public streets or highways in going to and returning from the place of employment is not compensable. *American General Insurance v. Coleman,* 157 Tex. 377, 303 S.W.2d 370, 374 (1957). The rule is known as the "coming and going" rule. The rationale of the rule is that "in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." *Texas General Indemnity Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex.1963); *Janak v. Texas Employers' Insurance Association,* 381 S.W.2d 176, 181 (Tex.1964); *Jecker v. Western Alliance Insurance Company,* 369 S.W.2d 776, 778 (Tex.1963).

Section 1b, Article 8309, enacted in 1957, has two parts. The first part declares injuries during travel are to be in the course of employment, and therefore compensable, only when transportation is (1) furnished as a part of the contract of employment, or (2) is paid for by the employer, or (3) is under the control of the employer, or (4) when the employee is directed in his employment to proceed from one place to another place. The second part is concerned with the "dual purpose" rule. It declares that injuries occurring during travel for the dual purpose

of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment, and therefore compensable, "unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The generally accepted test to be used in applying the "dual purpose" rule is set forth by Chief Justice Cordozo in *Marks' Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181, in this language:

The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. [Case cited.] If, however, the work has no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

■ In applying the test to the facts of the instant case it is apparent that the nature of Caddell's employment required him to be on the road. The service station invoice is some evidence of his trip to Waco and it is within the province of the jury to conclude that the trip was made. Further, there is at least some evidence that Caddell made the business trip to Waco in furtherance of his duties and thus within the scope of his employment. There is no evidence that the trip was made for reasons other than business, there being no evidence or indication that decedent's trip to Waco and back was for any personal or private motive. The evidence fully indicates that he would not have made the trip to Waco had there been no business of Caddell Drywall, Inc. to be furthered. Appellant's argument is that Caddell had ceased working at the time of the accident and was merely re-

turning home to relax and eat. However, evidence showed that the decedent had certain items relative to his work with him at the time of the fatal accident and there is at least some evidence that the decedent was returning to his office at home to work on the bids. Having reviewed the evidence in the light most favorable to the verdict and judgment, we conclude there was some evidence that Caddell was within the course of his employment at the time of his death. Appellant's first point of error is overruled.

Appellant contends in the second point of error that the trial court erred in entering the judgment because the award of attorney's fees is not discounted as required by Article 8306a. This court takes judicial notice of the tables and formulae certified as correct by the Industrial Accident Board of Texas and of the Widow's Pension Table based on the 1960 U.S. Life Tables for White Females. Further, we note that the statute cited by appellant refers to a discount when the beneficiary's recovery is by payment of lump sum. In the instant case the appellee did not seek to have her payments reduced to a lump sum; thus we are concerned only with the attorney's fee. A discount is not mandated under the statute when attorney's fees are paid in a lump sum. The judgment entered by the trial court ordered that there is a present value of future worker's compensation benefits in this case from and after April 10, 1981, the date of judgment, in the amount of $93,611.70 and the court found one-fourth (25%) of such amount, being $23,402.92, be paid to counsel in a lump sum, as attorney's fees with the remaining three-fourths to be paid weekly to the beneficiary under the Worker's Compensation Law. We hold that such payment of attorney's fees by lump sum is proper. *Texas General Indemnity Company v. Dougharty,* 606 S.W.2d 725, 728 (Tex.Civ.App.—Beaumont 1980, no writ); also see *Texas Employers' Insurance Association v. Flores,* 564 S.W.2d 831, 832 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). We have carefully reviewed appellant's argument and find the judgment of the trial court to be the proper application of the formulae regarding a lump sum recovery of attorney's fees. Appellant's second point is overruled.

Appellant's third and final point of error contends that the trial court erred in entering the plaintiff's form of judgment because it provides for an award of attorney's fees based upon a contingent liability of the defendant, in a lump sum, and such act was an abuse of the discretionary power of the court. The worker's compensation statute authorizes the trial court, in its discretion, to award lump sum attorney's fees even though the plaintiff's compensation is to be paid in weekly installments. Article 8306 § 7d; *Texas Employers Insurance Association v. Motley,* 491 S.W.2d 395 (Tex. 1973); also see, *Texas Employers' Insurance Association v. Dryden,* 612 S.W.2d 223, 225 (Tex.Civ.App.—Beaumont 1980, no writ); *Liberty Mutual Insurance Company v. Ramos,* 543 S.W.2d 392 (Tex.Civ.App.—El Paso 1976, no writ). The fact that the total amount of death benefits "recovered" cannot be definitely ascertained since the total amount of the payments is dependent on the time that the beneficiary survives or remains unmarried is immaterial to the lump sum award of attorney's fees. We adhere to the rule as set forth in numerous other cases that the indefinite nature of the death benefits award does not preclude the award of lump sum attorney's fees based on unaccrued compensation benefits. *Texas Employers Insurance Association v. Miller,* 596 S.W.2d 621, 626 (Tex.Civ.App.—Waco 1980, no writ). The amount of such fees and the method of their determination is a matter for the discretion of the trial court. *Texas Employers' Insurance Association v. Hatton,* 152 Tex. 199, 255 S.W.2d 848 (1953); *Walters v. Fidelity & Casualty Co. of New York,* 611 S.W.2d 934 (Tex.Civ.App.—Eastland 1981, no writ). In the case before us, there is no showing of abuse of discretion by the trial court. Appellant's third point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.