**TEXAS EMPLOYERS' INS. ASS'N v. SHIP-LEY et al. (No. 1038.)\***

(Court of Civil Appeals of Texas. Beaumont. March 10, 1924. Rehearing Denied April 2, 1924.)

1. **Master and servant ☞405(4)—Evidence in compensation case held to warrant finding of death from electric shock instead of heart disease.**

In a suit by the insurer to set an award of compensation for the death of a mill foreman found six or eight feet from a toolroom containing electric power and about two feet from his automobile, where compensation claimants alleged that he was killed by an electric shock received from an electric drill found near him, held, on the evidence as a whole, including the unexplained failure of insurer's physician to make a microscopic examination of the blood near the heart to acertain the presence of the disease angina pectoris, that the appellate court could not say that the jury's conclusion that death caused by electric shock, instead of the the disease, was unwarranted.

2. **Master and servant ☞405(4)—Evidence in compensation case held to show death in "course of employment."** .

Evidence that an assistant mill foreman, found dying shortly before 7 o'clock in the morning at a place six or eight feet from a tool shop wherein electric power was used and about two feet from his Ford car toward which he had apparently been carrying an electric drill connected to a socket within the building, had made it a practice for a number of years to arrive at work shortly after 6 o'clock for the purpose of getting things and tools in shape for the use of men to arrive at 7, held sufficient to warrant a finding that he met his death while "in the course of employment," and not while engaged or about to become engaged in personal repair work on his car. .

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

3. **Master and servant ☞348—Compensation Act liberally construed.** .

The Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h-5246zzzz) should be liberally construed.

4. **Evidence ☞54—Inference should not be drawn from uncertain premises; presumption cannot be based upon presumption.**

An inference cannot be drawn from uncertain premises, nor a presumption based upon another presumption, though a court may draw several conclusions or presumptions from the same circumstances; nor is it necessary to believe that the thing presumed was actually done, but sufficient if the evidence leads to a conclusion that it might have been done. .

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by the Texas Employers' Insurance Association to set aside an award of compensation by the Industrial Accident Board in favor of R. L. Shipley and others. From judgment for defendants, plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Oswald S. Parker, of Beaumont, for appellant.

Howth & O'Fiel, of Beaumont, for appellees.

HIGHTOWER, C. J. On May 5, 1922, R. L. Shipley, who was an employee of the Texas Company, at Port Arthur, Tex., died very suddenly while upon the premises at which he was employed. The Texas Company, at the time, was a subscriber under the Employers' Liability Act of this state, and carried a policy of insurance issued by appellant covering Shipley as one of its employees. Shipley, at the time of his death, was a married man, his wife being the appellee in this case, and they had two small children, one four years and the other four months of age. After Shipley's death, proper notice was given that compensation would

be claimed by appellees under the Workmen's Compensation Act of this state (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and such claim was filed in fact with the Industrial Accident Board of this state, and that board, after hearing the application, made an award in favor of Mrs. Shipley and the two minor children for $15 per week for 360 weeks. After this award was made, the insurance company, appellant here, in due time and after due notice that it would do so, filed this suit in the district court of Jefferson county to set the award aside; its grounds being, substantially stated, that Shipley did not meet his death as the result of an injury sustained while in the course of his employment by the Texas Company, and that appellant was not liable for any amount by reason of such death.

The appellees answered and filed a cross-action, in which they alleged, in substance, that Shipley was killed by an electrical shock while in the course of his employment for the Texas Company and while performing services in furtherance of the interests of the Texas Company.

The case was tried with a jury, and their verdict consisted of answers to the four following special issues:

"Special issue No. 1: What was the cause of death of R. L. Shipley? Answer: We, the jury, find from the evidence that R. L. Shipley was electrocuted.

"Special issue No. 2: Did such injury, if any, arise out of said R. L. Shipley's employment? Answer: Yes.

"Special issue No. 3: Did he receive such injury, if any, in the course of his employment? Answer: Yes.

"Special issue No. 4: Did he receive such injury, if any, while engaged in the furtherance of the affairs of his employment? Answer: Yes."

Upon the answers of the jury, judgment was entered in favor of appellees for $15 per week for a period of 360 weeks, and this amount was apportioned between appellees and their attorneys. After its motion for new trial had been overruled, this appeal was prosecuted by the insurance company.

Appellant's first contention is:

"There is not legally sufficient evidence to support the finding that R. L. Shipley was electrocuted or that he met his death by reason of an injury or electrical shock, as alleged in defendant's cross-action."

The second contention is:

"The evidence is not legally sufficient to support the findings of the jury that, if said R. L. Shipley died from an injury received, such injury arose out of or in the course of his employment or while engaged in the furtherance of the affairs of the Texas Company as his employer."

It will be readily seen that these contentions raise purely questions of fact, and in order to dispose of them it will be necessary to let this opinion show at some length what the evidence was relative to both contentions made by appellant.

Relative to the first contention made by appellant, it may be stated that the following facts were shown, practically without dispute:

R. L. Shipley, the deceased, had been working for the Texas Company at Port Arthur for approximately seven years at the time of his death, and for several years prior to his death was assistant foreman at what is called the shook mill of the Texas Company at Port Arthur. Shipley's duties as foreman were to see that the employees in the shook mill properly discharged their duties and to generally oversee and keep the plant in operation. The shook mill is where timbers or boards are shaped for the purpose of using them in the manufacture of boxes; that is, such timbers and boards are sawed and drilled there and afterwards removed and boxes made of them. On the morning of Shipley's death, in keeping with his custom ever since he had been assistant foreman, he came from his home, traveling in a small Ford car, and reached the shook mill somewhere between 6:10 and 6:30 o'clock; the time not being definitely shown. He stopped his car where he usually stopped it, and got out, and a few minutes later was seen to come out of the shook mill and proceed in the direction of his car, which was only a few feet from the shook mill; but why he did so, or what his purpose was, the evidence does not disclose. It was further shown by a witness that Shipley went to what is called the filing room or toolroom, which is a very small building about 18 or 20 feet removed from the shook mill proper, and there he borrowed from the electrician in the filing room an electric drill, without stating what he wanted to use it for, and he was not again seen alive, but about 20 minutes to 7 o'clock his prostrate body was found lying on the ground 6 or 8 feet from the filing room and about 2 feet from his Ford car. There was attached to the electric drill an insulated electric wire about 4 or 5 feet in length, and this was attached to a longer insulated electric wire, which had been brought through the window of the filing room and was fastened in an electric socket inside the filing room. The filing room contained electrical appliances, and the power used there for the sharpening of knives and saws to be used in the shook mill was that of electricity.

When Shipley's body was first discovered, life was nearly extinct, but not quite so, and he did not speak, and was dead within a few minutes after. The electric drill was laying on the ground a foot or two from Shipley's feet. All evidence upon the point was to the effect that there was no current in the drill at the time it was picked up, which was about the time Shipley's body was discovered. Whether or not the current had been turned

on in the electric drill nobody knows. A few minutes before Shipley's body was discovered, one of the witnesses testified he saw the electric lights burning in the filing room with which the electric drill was connected, but he was unable to say whether the lights were on at the time Shipley fell. The evidence shows that there was a switch on the electric drill, by the use of which the current in the drill could be turned on or cut off; but whether this switch had been used by Shipley the evidence does not indicate. Shortly if not immediately, after Shipley's body was discovered, the electric drill and wires connected therewith were picked up and examined, and it was found that the insulation on the wires was intact and did not permit the escape of electricity from the wire with the current turned on. Indeed, an electric current as high as 238 voltage was run through the wire with this same insulation, with a view to testing the sufficiency of the insulation, and it was found by this test that the insulation was sufficient to protect one handling the wire while carrying a current to that high voltage. The undisputed testimony further showed that the current that was carried through this drill wire ordinarily, with the attachments being used at the time of Shipley's death, reached only 110 voltage, and new attachments were placed for the purpose of making the high test above stated. After Shipley's death, as well as at the time his body was found, efforts were made to ascertain the cause of his death, and all the witnesses in that connection testified that there were no external signs or evidences of an electric shock. There were no scorches on his clothes and no burns or evidences of contact with his flesh.

The undisputed evidence, as a whole, was to the effect that usually an electric shock sufficient to produce death leaves some external indication of the shock, either on the clothing or flesh of the victim, and that such indications would usually be expected in the case of such a death. Testimony was, however, also to the effect that it was possible that a person may be killed by an electric shock or contact without there being external indications either on the person or clothing of the victim. Some of the physicians who testified in the case stated, substantially, that some authorities on electricity so declared. Early in the afternoon of the day of Shipley's death, appellant's approved surgeon at Port Arthur, Dr. T. B. Sappington, acting in behalf of appellant, procured written permission from Mrs. Shipley to hold an autopsy, or cause to be held an autopsy, on the body of Shipley, for the purpose of ascertaining the cause of his death. This written authority from Mrs. Shipley was broad and gave Dr. Sappington, as appellant's approved surgeon, full and complete authority to do any and everything with the body of Shipley that might lead to a knowledge of the cause of his death. Acting upon this authority, Dr. Sappington procured the services of Dr. W. F. Thomson, a specialist in the city of Beaumont, and he, on the same afternoon, in company with three other physicians, one of whom being Dr. Sappington himself, made a most thorough and complete examination of the body of Shipley, with a view to ascertaining the cause of his death. All these physicians first testified that they made minute examinations upon the clothing and body of Shipley to ascertain whether there were any indications of death by electric shock, and they all testified that there were no such indications either upon his clothing or upon his body. Then, with a view to ascertaining whether Shipley's death resulted from natural causes and not from an injury, they almost dissected his body. They took out his brain and examined that minutely and found nothing to indicate any character of disease of the brain; neither did they find anything in the brain to indicate that his death resulted from an electric shock. They also examined minutely his heart and found nothing to indicate any character of disease of that member. They then minutely examined his lungs and found nothing to indicate any character of disease of his lungs. They then examined carefully and minutely his kidneys and found nothing to indicate any character of disease of those members. They then carefully examined his liver and found nothing to indicate any character of disease of that member. They then examined carefully his stomach and found nothing to indicate that his death had resulted from anything contained in that member. Dr. Thomson, who performed this autopsy, in the presence of the other physicians, testified at great length on the case, and no useful purpose would be served by undertaking to set out his testimony here, or that of any other physician, in detail. He stated, in substance, when summed up, that after the most careful examination, he was unable to detect any particular cause whatever of Shipley's death, but was of the opinion, upon the whole, that his death was either the result of an electric shock or a disease called by medical men "angina pectoris." He stated that the disease angina pectoris was one that could only be detected by a microscopic examination of the blood in the vessels in close proximity to the heart, but that this examination he did not make, and there is no showing that he was asked to make it by Dr. Sappington or any one else. The reasonable inference from Dr. Thomson's testimony in that connection is that it could have been definitely ascertained by a microscopic examination whether R. L. Shipley's death was the result of the disease angina pectoris. If such examination had been made for that disease, and it had been found present, it would certainly have excluded appellees' theory that Shipley's death was the result of an electric shock.

To sum up the evidence of all the physicians, as well as the laymen, there was no external evidence or indications of any electric shock to Shipley, and to sum up the evidence of all the physicians, there was no evidence that Shipley's death resulted from any natural cause or causes. There was this further testimony, which was before the jury for what it was worth: One of the Texas Company's employees, and, one of the intimate associates of Shipley in the shook mill, testified that on "several occasions" he had heard Shipley complain of heart trouble or say that he had a "bum" heart, and that sometimes Shipley would indicate, by putting his hand in the region of his heart, that that member was in trouble, and that on some occasions, when in that condition, Shipley would lean against something for support for a few seconds. This witness, on cross-examination by counsel for appellees, was unable to say when he had last heard Shipley make any such complaint; that is, whether it was a day or two or a week or two or a month or a year or several years. He continued, under persistent cross-examination, to say that the nearest he could come at the dates of such occurrences was that it was on several occasions. This was the substance of the testimony of this witness. Another witness, Mrs. H. O. Preston, introduced by appellant, testified, in substance, that she was first aid nurse in the employ of the Texas Company at the case and box factory, a plant near the shook mill, and that on the day, about noon, prior to Shipley's death, he came to her and complained of what she thought was indigestion, and she gave him some aromatic spirits of ammonia in a little water, and in a few seconds he seemed all right. This witness further testified that on the morning of Shipley's death, and after his death, Mrs. Shipley told the witness that Mr. Shipley had had trouble with his heart the night before, but that no physician was called, and Mrs. Shipley did not know the extent of the trouble that was affecting Shipley. Mrs. Shipley was afterwards recalled to the stand and denied, emphatically, making any such conversation with Mrs. Preston, and stated that she had never seen Mrs. Preston prior to the time she saw her on the stand in the courtroom. She further testified that her husband was about 28 years of age, and was never sick since she had been his wife, a period of more than six years, with the exception of a cold or headache some few times, and that he had never failed to go to his work on account of sickness since she had known him.

[1] There is no use carrying this opinion on this point at greater length. The only question in this connection is whether the evidence as a whole, circumstantial and otherwise, was sufficient to warrant the jury in the conclusion that Shipley's death was produced by an electric shock. We admit that it is a close question, and also concede that the burden of proof rested upon the appellees; but we are not prepared to say that, taking the evidence as a whole, the jury was not warranted in their conclusion that Shipley's death was probably caused by an electric shock, as claimed by the appellees. In reaching this conclusion, we have considered as of some probative force the fact that Dr. Sappington, who was acting in the interest of and on behalf of appellant insurance company, having full and complete authority from Mrs. Shipley to make any and all examination of his body that he might deem proper and necessary, with a view to ascertaining the cause of Shipley's death, failed to make or request Dr. Thomson to make a microscopic examination, with a view to ascertaining whether Shipley's death was caused by the disease angina pectoris. This was within Dr. Sappington's authority and power, and Dr. Thomson, as we have shown, testified that, if such disease existed, its presence could have been detected by a microscopic examination, and there was nothing in the evidence to indicate that this might not have been done at the time of the autopsy. There is no explanation from Dr. Sappington why such microscopic examination was not made, and we believe that the fact that it was not made or requested by him, under the facts of this case, was a circumstance that might be weighed by the jury and the inference drawn by them that Dr. Sappington's failure to make this examination was because of his doubt that such disease would be found present. It seems to us that after Dr. Thomson had testified so clearly that Shipley's death was caused either by an electric shock or by the disease angina pectoris, and that the presence of such disease as the cause of Shipley's death could have been ascertained by means of the microscope, Dr. Sappington was called upon for some explanation, as the representative of appellant in this case, as to why such examination was not made. We therefore overrule the contention of appellant that the jury's finding to the effect that Shipley's death was caused by an electric shock is not sustained by sufficient evidence.

[2] This brings us to appellant's second contention, which, as we have shown, is that the evidence was not sufficient to show that Shipley met his death while in the course of his employment, or while performing services in furtherance of his employer's interests. We shall not discuss at great length, or in detail, the evidence on this point, but will sum it up, because it is wholly without dispute, as follows:

As we have said above, Shipley had been in the employ of the Texas Company for a period of approximately seven years, and the positive and undisputed testimony shows that during all the time that he had been assistant

foreman at the shook plant, it had been his regular custom to get to the plant each morning between 6:10 and 6:30 o'clock, for the purpose of getting things in shape for the operation of the shook mill promptly when the 7 o'clock whistle should blow. All employees at the shook mill were supposed to commence actual service promptly at 7 o'clock, and Shipley, according to the undisputed and positive evidence, for a number of years was always on hand, as indicated, to see that the saws and knives of the mill, and other appliances, were in proper shape that the mill might be set immediately in operation at the moment of 7 o'clock, and the undisputed testimony is, so far as there is any on it, that when Shipley did get to the mill each morning he would proceed promptly to see that things were put in operation for the prompt starting of the mill at 7 o'clock. It is further shown by the undisputed evidence, however, that there was no duty where Shipley's body was found that he could perform in the interest of his employer. In other words, no part of the machinery of the shook mill or anything connected with it was where his body was found. But this was only a few feet from the shook mill itself, and practically, and we believe in legal contemplation, the shook mill proper, and if Shipley, being upon the premises of his employer in his position of duty, was there for the purpose—any purpose—in the furtherance of the interests of his employer, he was within the course of his employment, in contemplation of the Employers' Liability Act, whether he was actually engaged in performing some duty at that very moment or not.

[3] We understand that all courts and all jurisdictions have held that the Workmen's Compensation Act should be liberally construed, and we believe that to hold that Shipley must necessarily have been in actual performance of some service which was in furtherance of his employer's interests at the very moment of his injury would be to give too strict a construction to the act. Unquestionably, he had come to the premises for the purpose of prosecuting his employer's business, in accordance with the custom of several years, as shown by the positive and undisputed testimony. But there was also evidence introduced on behalf of appellant that Shipley, a day or so before his death, had said something to one of the employees of the shook mill to the effect that he (Shipley) intended to put a body on his little Ford car (his little Ford was a skeleton car), and it is appellant's theory here, and was in the trial court, that Shipley, at the time he met his death, was attempting to use the electric drill for the purpose of drilling a hole somewhere in his car, or using the drill in some way upon the car for the purpose of preparing it for the body that he intended to put on it, and that therefore, if he was engaged in such attempt at the time, he was not acting within the scope of his employment, nor in furtherance of his employer's interests, but was acting for himself, personally, and that if he received his injury in using the drill, or in preparation to use the drill, for such purpose he could not recover in this case. The testimony in connection with this theory of appellant was, in substance, that Shipley's body was found about two feet from his little Ford car, which was stopped, as we have shown, where it was usually stopped on his reaching the shook mill, and that his hand was almost in reach of one of the wheels of the car at the time his body was found. There was another witness, an employee of the Texas Company at the shook mill, who testified that he had been working at the mill some 20 months or more, under Shipley, and saw him every day, and had not heard him say anything about putting a new body on his Ford car, and this witness further testified that he had helped Shipley remove the body from the Ford car at the time it was removed, and the testimony of this witness indicated that had Shipley intended to put a body back on the car, there would have been no necessity for the use of the drill, because the holes were already in the frame of the car sufficient for the purpose.

From these circumstances just mentioned, able counsel for appellant insists that the evidence left it more probable that Shipley was in the act of working on his car than that he was performing any service for the Texas Company at the time he met his death. We have given this contention of counsel very full and careful consideration, but have reached the conclusion that we cannot sustain the contention. We have shown already that it had been Shipley's custom for a number of years to reach the shook plant about the time he reached it on the the morning in question, for the purpose of performing services for his employer, the Texas Company, as assistant foreman, and that when reaching the plant he always immediately began preparations to have the plant in operation promptly at 7 o'clock. We think that from these undisputed and positive facts, the jury were authorized to infer, and act upon the inference, that on the morning in question, when Shipley met his death, he was there in keeping with his custom, and that he was doing something in furtherance of his master's interests.

[4] In 22 Corpus Juris, p. 84, § 27, we find this:

"An inference of fact should not be drawn from premises which are uncertain, but the facts upon which an inference may legitimately rest must, it is said, be established by direct evidence as if they were the very facts at issue. It follows that one presumption cannot be based upon another presumption. It is, however, per-

missible for a court or jury to draw several conclusions or presumptions of fact from the same circumstances, and in order that a presumption may be indulged, it is not necessary to believe that the thing presumed has been actually done, but it is sufficient if the evidence leads to a conclusion that it may have been done, and that its existence would be the solution of the difficulty arising from its nonexistence."

In support of the text, the author cites decisions emanating from high judicial authority, and we believe that the rule of evidence announced in the text can be correctly applied here, and that the jury, in view of the positive and undisputed proof of long custom on the part of Shipley to be at the plant, as he was on the morning in question, in furtherance of his master's interests, and on such occasions was engaged in the performance of services for his master, was sufficient to authorize an inference on the jury's part, upon which they might act, that he was there for the same purpose on the morning in question, and that he was acting in furtherance of his master's interests at the time he met his death. We therefore overrule the contention.

These are the vital and only close questions raised by appellant in its brief, and their disposition must control this suit. All other contentions we have given careful consideration, but have concluded that they cannot be sustained. It follows that we are of opinion that the judgment of the lower court should be affirmed, and it has been so ordered.

### On Motion for Rehearing.

We granted appellant's motion for oral argument on its motion for rehearing, and since the argument on the motion we have reconsidered our opinion disposing of this appeal, and have again concluded that our original opinion was correct and that the motion for rehearing must be overruled, and we have so ordered.

In our written opinion we did not state that the undisputed evidence upon the trial showed that the deceased, R. L. Shipley, had never at any time during his employment with the Texas Company prior to his death had occasion to use the electric drill that was found near him at the time of his death in the discharge of any duty he owed to the Texas Company.

The undisputed evidence showed this to be a fact, and we now so find. Aside from this, our attention has not been called to any material fact not stated in the original opinion.