TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Appellant,

v.

Dawn Lenore CLAPPER, Indiv. A/N/F
for Verlene Luann Clapper, Minor et
al., Appellees.

No. 17632.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 10, 1980.

Rehearing Denied Sept. 4, 1980.

Talbert, Giessel & Stone, Robert L. Ramey, Alice Giessel, Houston, for appellant.

Gibson, Spain & Minor, Mainess Gibson, Houston, for appellees.

Before EVANS, PEDEN and WARREN, JJ.

EVANS, Justice.

This is a worker's compensation death case.

On the day of his death William Clapper was an employee of Chemical Refining Corporation, working as a welder on an elevated pipe rack at a Petro–Tex plant. The central issue at the trial was whether Clapper's death was due to electrocution.

The jury found in favor of the plaintiff in response to the following special issues:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of evidence that Bill Clapper received an injury on December 29, 1976?
Answer "We do" or "We do not."
Answer: "We do."
If you answered Special Issue No. 1 "We do" and only in that event, then answer:

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that he received such injury in the course of his employment by Chem–Ref?
"Injury in the course of employment" means any injury having to do with and originating in work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs of business of his employer, whether upon the employer's premises or elsewhere.
Answer "We do" or "We do not."
Answer: "We do."
If you have answered Special Issue No. 2 "We do" and only in that event, then answer:

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that such injury was a producing cause of the death of Bill Clapper?
"Producing cause" means an injury or condition which, either independently or together with one or more other injuries or condition, results in death, and without which such death would not have occurred when it did. There may be more than one producing cause.
Answer "We do" or "We do not."

Answer: "We do."

On the basis of the jury's findings, the trial court entered judgment in favor of the plaintiffs. The judgment will be affirmed.

The defendant first complains that the trial court erred in submitting the first two special issues, arguing that those issues, as submitted, do not properly limit the jury's inquiry to the question of whether Clapper's death was due to electrocution.

■ In order to preserve error regarding the form of submission of a special issue, it is necessary for the party objectioning to the charge to obtain the court's ruling on the objection and to include such ruling in the appellate record. *Carr v. Gregory*, 472 S.W.2d 819 (Tex.Civ.App.–Corpus Christi 1971, no writ). The record does not show the trial court's ruling on the defendant's objections, and this court therefore lacks a basis for review. *Grabes v. Reinhard Bohle Machine Tools, Inc.*, 381 S.W.2d 395 (Tex.Civ.App.–Corpus Christi 1964, writ ref'd n. r. e.); *Gale v. Spriggs*, 346 S.W.2d 620 (Tex.Civ.App.–Waco 1961, writ ref'd n. r. e.).

■ The defendant also contends that the trial court erred in refusing to submit the following issues and accompanying instructions which it requested:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that William Clapper had an electrocution episode on December 29, 1976?

If you have answered Special Issue No. 1 "We do," and only in that event, then answer:

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that he had such electrocution episode in the course of his employment by Chem–Ref Construction?

An electrocution episode is in the course of employment if it is produced or precipitated by an employee's work or the conditions of his employment. Otherwise an electrocution episode is not in the course of employment, even if it occurs on the job.

If you answered Special Issue No. 2 "We do," and only in that event, then answer:

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that such an electrocution episode was a producing cause of the death of William Clapper?

"Producing cause" means an injury or condition which, either independently or together with one or more other injuries or condition, results in death, and without which such death would not have occurred when it did.

These requested issues would include within the term "electrocution episode" an injury "produced or precipitated by the employee's work or the conditions of his employment" and would exclude an injury sustained not in the "course of employment," even if it occurred "on the job." The issues do not define the term "course of employment."

There is no evidence that at the time of Clapper's death he was engaged in any activity other than the job for which he was employed. The requested issues would only confuse the jury regarding the proof necessary to establish that the injury occurred during the course of employment. The trial court did not err in refusing to submit such issues to the jury.

■ The defendant also contends that the trial court erred in refusing to instruct the jury that the injury must be traceable to a definite time and place, to–wit December 29, 1976, at the Petro–Chem plant in Harris County, Texas. The defendant relies upon the language of the Texas Supreme Court to the effect that in order for there to be an accidental injury there must be "an undesigned, untoward event traceable to a definite time, place and cause." *Olson v. Hartford Accident and Indemnity Company*, 477 S.W.2d 859 (Tex.1972). It is undisputed that Clapper, a healthy man with no previous history of heart problems, died within a ten to fifteen minute time span. This is not a case where the injury occurred over a period of time, and the trial

court did not err in refusing to give the requested instruction. *Continental Insurance Company v. Marshal*, 506 S.W.2d 913 (Tex.Civ.App.–El Paso 1974, no writ).

The next question raised by the defendant's points of error is whether the evidence is factually sufficient to support the jury's findings to special issues 1 through 3, and whether the jury's answers to such issues are against the great weight and preponderance of the evidence.

Prior to his death Clapper was working as a member of a crew installing pipe at the Petro–Tex plant. Clapper, standing on a metal pipe rack elevated ten to fifteen feet above the ground, would weld sections of pipe as they were placed in position by other members of his crew. He used a welding machine consisting of a welding rod attached by leads to a gas powered welding machine on the floor and a grinder attached to the welding machine by an extension cord.

Shortly before 2:00 P.M. Clapper was seen standing on the pipe rack, lowering his leads and extension cord. He was next seen about 10 to 15 minutes later in a kneeling position on the pipe rack. After trying unsuccessfully to gain his attention, his co–workers investigated and found that he was dead, his head resting on a wooden four by four. Clapper's co–workers testified that after his body was found, the welding leads and extension cord were found unattached, hanging down from the pipe rack, and the welding machine was turned off.

The plaintiff's engineering witness, Mr. John T. Butters, an electrical engineer, testified that in August, 1977, he used a volt meter to test electrical resistances between the conduit, the steel walkway and other pipes in the area and between the conduits and the ground.

It was Mr. Butter's conclusion that the plant's complex conduit system was improperly bonded to the ground and that this "lack of a solid ground" between the conduits and ground permitted a high voltage to be built up in the area where Clapper was working, creating a potential for an electrical accident. It was Mr. Butter's hypothesis that when voltage built up in the conduit system Clapper became a part of the electrical circuit and was electrocuted by a surge of high voltage electricity. Mr. Butters testified that even though the steel beam structure was connected to concrete fittings set in the ground, the electrical conduits within the structure were not electrically bonded to ground.

The defendant's engineering witness, Mr. Herbert Shilstone, testified that he had examined and tested the grinder and electrical cord and found them in safe operating condition. Where Mr. Butters had reported finding very high resistance between conduits and the ground, Mr. Shilstone testified that the highest reading he obtained was .08 ohm. Mr. Shilstone found the pipe rack structure grounded in some 2,000 places, and it was his opinion that even if there had been 500,000 ohms of resistance on the pipes, as Butters had found, Clapper could not have received a dangerous electrical shock. He concluded that Butter's measurements of high resistance, 350,000 to 500,000 ohms, were physically and electrically impossible and could not exist.

An autopsy was conducted on Clapper's body by Dr. Joseph Jachimczyk, the Harris County Medical Examiner, and by Dr. Richard Bagardo, an assistant Medical Examiner for Harris County. The autopsy report indicates the examiners found a two by 0.5 inch abrasion across Clapper's right cheek and, in its middle portion, "a parchment–like area compatable with an electrical burn." When Dr. Bagardo first examined Clapper's body, he questioned whether the mark on the right cheek was an electrical burn. He believed the mark was an electrical burn, but he wanted a second opinion. The mark could have been the result of his falling, but the features of the mark were not that of an abrasion.

Dr. Jachimczyk, the Medical Examiner for Harris County, examined Clapper's body the day after the examination by Dr. Bagardo. He had received a report from somebody in his office that the deceased had been exposed to electricity, and in view of Dr. Bagardo's initial opinion that the

cause of death was not electrical, he decided to examine the body himself. After that examination both he and Dr. Bagardo concluded that the mark was an electrical burn and declared the cause of death to be electrocution.

Dr. Vincent DiMaio, the Medical Examiner for Dallas County was called as a witness for the defendant. Dr. DiMaio had reviewed the autopsy report, certain investigatory reports and a photograph taken at the time of the autopsy showing the mark on Clapper's right cheek. He had also reviewed the deposition testimony of Dr. Jachimczyk. Based upon this information he was of the opinion that the mark was not an electrical burn but rather an abrasion. On the basis of such data and the indication in the autopsy report that there was a 60% narrowing of Clapper's blood vessels, he concluded that Clapper had a heart attack. He conceded that one of the factors he took into consideration in arriving at this conclusion was the defendant's statement to him that there was no source of electricity with which Clapper could have come into contact.

■ The evidence regarding the cause of Clapper's death was circumstantial in nature, both parties relying heavily upon the testimony of expert witnesses. In order for a plaintiff to establish an ultimate issue by circumstantial evidence, there must be reasonably satisfactory and convincing proof from which a legal inference may be drawn. *State Farm Mutual Auto Ins. Co. v. Davis*, 576 S.W.2d 920 (Tex.Civ.App.–Waco 1979, writ ref'd n. r. e.); *Mobile, Inc. v. Cone*, 457 S.W.2d 175, 176 (Tex.Civ.App.–Tyler 1970, writ ref'd n. r. e.).

From the evidence presented on behalf of the defendant, the jury could have concluded the mark on the cheek of the deceased was an abrasion, caused by his having fallen against the wooden four by four or some other obstacle on the pipe rack. The jury could also have inferred from the defendant's evidence that it was physically impossible for a dangerous electrical current to have come in contact with the deceased. However, the evidence on these questions was in sharp dispute, and there was also

factually sufficient evidence from which the jury could have inferred that the cause of Clapper's death was due to an electrical shock.

There is evidence in the record indicating there were electrical problems in the Petro–Tex plant on the day of Mr. Clapper's death. The plaintiff's engineering witness, Mr. Butters, testified that the conduit system was not properly grounded and that there was a potential for Clapper to have received a lethal charge of electricity on the day of his death. Both Drs. Jachimczyk and Bagardo testified that the mark on the deceased's cheek was an electrical burn and that, in their opinion, his death was due to electrocution.

■ In deliberating upon the question of whether Clapper received an injury within the meaning of the court's charge, the jury was entitled to consider all of the circumstances surrounding the occurrence including the testimony of the plaintiff's expert witness tending to show how the incident could likely have happened. *J. Weingarten, Inc. v. Obiedio*, 515 S.W.2d 308, 311 (Tex.Civ.App.–Houston [1st Dist.] 1974, writ ref'd n. r. e.). Circumstantial evidence indicating the probable cause of an injury may, in an appropriate situation, be considered by the trier of fact as some proof of the act or condition. *Gulf Pipeline Co. v. Bailey*, 40 S.W.2d 938, 941 (Tex.Civ.App.–Texarkana 1931, writ dis'm); *Washington v. Missouri K & T Ry. Co. of Texas*, 90 Tex. 314, 38 S.W. 764 (1897).

■ Although there is evidence in the case at bar which would support an inference that Clapper died from a heart attack, there is also factually sufficient evidence from which the jury could have concluded that his death was due to electrocution. The jury's findings are not so against the great weight and preponderance of the evidence as to shock the conscience of the court or to show clearly that its conclusion was wrong or the result of passion, prejudice or improper motive, and this court will not disturb its findings. *Burk v. Mata*, 529 S.W.2d 591 (Tex.Civ.App.–San Antonio 1975, writ ref'd n. r. e.); *Texas Employers*

*Ins. Ass'n. v. Shipley*, 260 S.W. 646, 649 (Tex.Civ.App.–Beaumont 1924, writ dism'd).

■ In its remaining point of error the defendant contends that the trial court erred in awarding attorney's fees in a lump sum, arguing that this was an issue for the trier of fact and that there was no evidence presented nor any issue submitted to the jury relating to the present value of future benefits payable to the widow.

After the argument to the jury, the trial court took evidence regarding the matter of attorney's fees. The court took judicial notice of a publication entitled "Texas Units Statistical Planned Determination of Incurred Losses for Life Pension Cases–Table I–Widow's Pension Table," which it found had been certified as correct by the Industrial Accident Board. Using this table, the trial court found the present value of the future compensation benefits to be paid to the decedent's widow, and on the basis of such finding, it computed and awarded lump sum attorney's fees.

The worker's compensation statute authorizes the trial court, in its discretion, to award lump sum attorney's fees even though the plaintiff's compensation is to be paid in weekly installments. Article 8306 § 7d, Tex.Rev.Civ.Stat.Ann.; *Texas Employers Insurance Association v. Motley*, 491 S.W.2d 395 (Tex.1973); *Liberty Mutual Insurance Company v. Ramos*, 543 S.W.2d 392 (Tex.Civ.App.–El Paso 1976, writ ref'd n. r. e.); *Texas Employers Insurance Association v. Flores*, 564 S.W.2d 831 (Tex.Civ.App.–Fort Worth 1978, writ ref'd n. r. e.).

It is the defendant's contention that the present value of the future benefits to be paid to the widow cannot be determined by reference to the widow's pension tables or otherwise because of the contingencies of the widow's death or remarriage which would terminate any further liability on its part. The defendant further contends that this question requires a determination of an issue of fact and that no such issue was submitted to the jury.

In *Twin City Fire Insurance Company v. Cortes*, 576 S.W.2d 786 (1978) the Texas Supreme Court stated:

The problems of computing a lump sum death benefit award, although admittedly greater than those in injury cases, are not so great as to warrant denying beneficiaries' enforcement rights under article 8307, section 5a. Cf. *Middlebrook v. Texas Indemnity Insurance Co.*, 112 S.W.2d 311, 313 (Tex.Civ.App.–Dallas), writ dism'd w. o. j. per curiam, 131 Tex. 163, 114 S.W.2d 226 (1939). The need for protection of beneficiaries' rights to timely payment of death benefits, which frequently are a primary means of support for a family, outweighs the inconvenience encountered in computing a lump sum . . . *Twin City Fire Ins. Company v. Cortez*, 576 S.W.2d 786 (Tex.1978).

In the case at bar the defendant did not offer any evidence in rebuttal of the plaintiff's case on this issue, and the trial court did not abuse its discretion in fixing and allowing lump sum attorney's fees pursuant to the statute.

The trial court's judgment is affirmed.