**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Brenda DRYDEN et al., Appellees.**

No. 8564.

Court of Civil Appeals of Texas, Beaumont.

Dec. 31, 1980.

Rehearing Denied Jan. 29, 1981.

John D. Rienstra, Jr., Beaumont, for appellant.

John H. Seale, Jasper, for appellees.

DIES, Chief Justice.

This is a worker's compensation case. Dorman Dryden was killed while he was an employee of Trotti & Thomson, a construction firm. Subsequently, his widow, Brenda, for herself and a minor daughter, Denna, as plaintiffs below, sued Texas Employers' Insurance Association (insurer), defendant below, for death benefits. Plaintiffs were given judgment from which defendant brings this appeal. The parties will be referred to in this opinion as they were below.

Defendant's first two points of error urge there was no, or insufficient, evidence that the deceased was in the course and scope of his employment at the time of his death. We address these points under the guidance of *Garza v. Alviar*, 395 S.W.2d 821 (Tex.

1965); and, *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Defendant cites us *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex. 1977), and *Smith v. Texas Employers' Ins. Ass'n*, 129 Tex. 573, 105 S.W.2d 192 (1937), for the propositions that for a claimant to recover under the Texas Worker's Compensation Act, he must meet two requirements: First, the injury must have occurred while the claimant was engaged in or about the furtherance of the employer's affairs or business. Second, the claimant must show that the injury was of a kind and character that had to do with or originated in the employer's work, trade, business, or profession.[1] We accept these statements as being correct propositions of law in Texas.

■ The deceased was referred to as a "field engineer." His wife testified: "Generally he surveyed." The instruments he used belonged to his employer. He was paid a flat salary ($350 a week) plus expenses for his pickup. He was on twenty-four hour call, as well as week-ends. He did not come home for lunch, taking it with him. On the day of his death he was working mainly on the Dowlen Road job. But, he also worked on the job "[o]ff Lawrence Drive," and on another job near Nederland. The deceased was killed in a car accident. If he had been proceeding from the Dowlen job to his home in North Beaumont he would have turned off sooner.

The deceased was a diabetic and gave himself daily insulin injections. These injections would sometimes cause a reaction. He carried candy with him to eat when such a reaction occurred. At the time of his fatal collision, the deceased was on the Eastex Freeway. His employer, Trotti & Thomson, had a construction project under-

way on the Freeway "that began somewhere around the Lower Neches Valley Canal and ran northward up to approximately where the Texas Highway Department building is."

Mary Oldbury was employed by Trotti & Thomson at the time of decedent's death. She knew the deceased and knew that he was a "field engineer." On the day he was killed, before lunch, she had a conversation with him. She "asked him why he was loading up his truck, and he told me he was going to another job." [2]

Marvin L. Thomas, foreman for Trotti & Thomson, knew the deceased and identified his title as "field engineer." He knew that the deceased worked more than one jobsite at a time. So far as the witness knew, the deceased never went home for lunch.

Floyd Moses, General Superintendent for Trotti & Thomson, testified they usually had five or six jobs going at one time; that on occasion he would move the deceased from one job to another. The deceased was killed on the Lawrence Drive job which was about two miles from the Dowlen job. He knew of the deceased doing some work on the Lawrence Drive job sometime before his death.

Harold Deckert, Superintendent for the Lawrence Drive project, knew that at one time the deceased "had come over on our job and set blue top for us." But, on the day of deceased's accident he had not requested his help. He saw Dryden come though the barricade. The collision was "outside the constructive area." "[H]e [the deceased] was just going straight ahead, just in a trance."

Dr. Joe Koch interpreted deceased's blood sample (taken after the collision) as reflecting "a very high insulin level in the blood and a very, very low blood sugar level."

1. See also, *International Ins. Co. v. Deatherage*, 606 S.W.2d 548, 548–549 (Tex.Civ.App.—Austin 1980, no writ).

2. This was objected to as being hearsay, and carried forward as appellant's Point of Error No. Three. However at oral argument appellant abandoned this point. See *Elledge v. Great American Indemnity Company*, 159 Tex. 288, 312 S.W.2d 722 (Tex.Civ.App.—Houston 1950) writ ref'd n. r. e. per curiam, 320 S.W.2d 328 (Tex.1959); *Freeman v. Texas Compensation Ins. Co.*, 586 S.W.2d 172 (Tex.Civ.App.—Fort Worth 1979), aff'd on other grounds, 603 S.W.2d 186 (Tex.1980); *Trucker's Equipment, Inc. v. Sandoval*, 569 S.W.2d 518, 522 (Tex.Civ.App.—Corpus Christi 1978, no writ); 1A R. Ray, *Texas Law of Evidence* § 868 (Texas Practice 3rd ed. 1980).

From this evidence we believe the jury could conclude the deceased was on his way to the Lawrence Drive project, which he was authorized to do, when, because of insulin shock, he was involved in a fatal collision. These points of defendant are overruled.

■ Defendant's last two points of error complain of the court's awarding attorney's fees in a lump sum by taking judicial notice of the so-called "Widow's Pension Table."

We have heretofore written on this subject and cited the authorities we believe gave the trial court this power. See *Texas General Indemnity Company v. Billie Dougharty*, 606 S.W.2d 725 (Tex.Civ.App.—Beaumont 1980, no writ). See also, *Texas Emp. Ins. Ass'n v. Clapper*, 605 S.W.2d 938, 943 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ):

"In its remaining point of error the defendant contends that the trial court erred in awarding attorney's fees in a lump sum, arguing that this was an issue for the trier of fact and that there was no evidence presented nor any issue submitted to the jury relating to the present value of future benefits payable to the widow.

"After the argument to the jury, the trial court took evidence regarding the matter of attorney's fees. The court took judicial notice of a publication entitled 'Texas Units Statistical Planned Determination of Incurred Losses for Life Pension Cases—Table I—Widow's Pension Table,' which it found had been certified as correct by the Industrial Accident Board. Using this table, the trial court found the present value of the future compensation benefits to be paid to the decedent's widow, and on the basis of such finding, it computed and awarded lump sum attorney's fees.

"The worker's compensation statute authorizes the trial court, in its discretion, to award lump sum attorney's fees even though the plaintiff's compensation is to be paid in weekly installments. *Article 8306, § 7d, Tex.Rev.Civ.Stat.Ann.; Texas Employers Insurance Association v. Mot-*

*ley*, 491 S.W.2d 395 (Tex.1973); *Liberty Mutual Insurance Company v. Ramos*, 543 S.W.2d 392 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.); *Texas Employers Insurance Association v. Flores*, 564 S.W.2d 831 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n. r. e.).

"It is the defendant's contention that the present value of the future benefits to be paid to the widow cannot be determined by reference to the widow's pension tables or otherwise because of the contingencies of the widow's death or remarriage which would terminate any further liability on its part. The defendant further contends that this question requires a determination of an issue of fact and that no such issue was submitted to the jury.

"In *Twin City Fire Insurance Company v. Cortez*, 576 S.W.2d 786 (1978), the Texas Supreme Court stated:

" 'The problems of computing a lump sum death benefit award, although admittedly greater than those in injury cases, are not so great as to warrant denying beneficiaries' enforcement rights under *article 8307, section 5a*. Cf. *Middlebrook v. Texas Indemnity Insurance Co.*, 112 S.W.2d 311, 313 (Tex.Civ.App.—Dallas), writ dism'd w. o. j. per curiam, 131 Tex. 163, 114 S.W.2d 226 (1939). The need for protection of beneficiaries' rights to timely payment of death benefits, which frequently are a primary means of support for a family, outweighs the inconvenience encountered in computing a lump sum....' *Twin City Fire Ins. Company v. Cortez*, 576 S.W.2d 786 (Tex.1978).

"In the case at bar the defendant did not offer any evidence in rebuttal of the plaintiff's case on this issue, and the trial court did not abuse its discretion in fixing and allowing lump sum attorney's fees pursuant to the statute."

These points are overruled.

The trial court's judgment is affirmed.

AFFIRMED.

KEITH, Justice, concurring.

It is with great reluctance that I join in the affirmation of the portion of the opinion which orders the lump sum payment of the attorney's fees of counsel for the plaintiffs.

In our first exposure to the question, *Walden v. Royal Globe Ins. Co.*, 577 S.W.2d 296, 301 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.), in speaking for the Court, I noted:

"[T]he propensity or the likelihood of a widow remarrying is not, in our opinion, subject to such actuarial proof. Indeed, in our study we have found but one case on the subject, *Osborn v. Osborn*, 252 S.W.2d 837, 840 (Mo.App.1952), where the court states:

" 'Missouri Jurisprudence has not yet advanced to the point where re-marriage statistics have much evidentiary weight in solving this difficult problem.' "

As noted in *Walden v. Royal Globe Ins. Co.*, supra, the Supreme Court in *Twin City Fire Insurance Co. v. Cortez*, 576 S.W.2d 786, 790, fn. 5 (Tex.1978), did not *specifically approve* the use of remarriage tables; it simply noted that some states "have provided for the use of remarriage tables." It could have, with equal accuracy, continued by noting that Texas has not provided for the use of such tables.

We faced the problem again in *Texas General Ind. Co. v. Dougharty*, 606 S.W.2d 725 (Tex.Civ.App.—Beaumont 1980, no writ), and expressed our "judicial unease" as to the question of taking judicial notice of such unqualified tables.* The insurance carrier did not seek judicial approval or rejection of our "unease", and permitted our unease to continue unabated.

In *Texas Employers' Insurance Association v. Clapper*, 605 S.W.2d 938, 943 (Tex. Civ.App.—Houston [1st Dist.] 1980, no

writ), the court noted that since the defendant did not offer evidence in rebuttal of the "plaintiff's case on this issue"—the certified copies of a named table—the trial court did not abuse its discretion in fixing and allowing the fees. Here there was no evidence offered; consequently, there was no opportunity to rebut.

I respectfully suggest that now is an appropriate time for the Supreme Court to review the subject so as to set out guidelines for the allowance of attorney's fees under the new statute.

---

* No such tables have ever been introduced in evidence in any case which we have reviewed; and, speaking as one member of the judiciary, I know nothing of such tables.

In *Texas Employers' Insurance Association v. Clapper*, 605 S.W.2d 938, 943 (Tex.Civ.App.—

Houston [1st Dist.] 1980, no writ), cited by the majority, after a hearing at which certified copies of a named instrument had been exhibited, the court then took judicial notice of the tables. No such showing has ever been made in this case or any other reaching this court.